**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

v.

ROBERT ANDREWSH,

Defendant.

NO. 5:19-mj-00087

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This matter is before the court on the motion to review detention order based on changed circumstances (Doc. 19) filed by the defendant, Robert Andrewsh.

On December 18, 2019, Andrewsh was charged in a criminal complaint with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 842(a)(1). On the same date, he appeared before the undersigned United States magistrate judge for an initial appearance and a detention hearing. After the hearing, we ordered that Andrewsh be detained pending trial, and he has been in custody since. (Doc. 8). On February 26, 2020, he filed a motion to review detention. After a hearing on March 5, 2020, that motion was denied, and his detention continued.

1

Andrewsh now asks that we reconsider our order for two reasons: (1) the risk of being confined in a large group during the COVID-19 global pandemic, which places him at substantial risk because he is asthmatic; and (2) a more suitable release plan has been developed where Andrewsh proposes to reside with his father who is also willing to serve as a third-party custodian. In his motion, Andrewsh attached a certificate of non-concurrence (Doc. 19-1) certifying that the assigned assistant United States attorney does not concur in his motion. Andrewsh filed a brief in support of his motion (Doc. 20), and his counsel filed a notice of non-resolution (Doc. 21). In the notice of non-resolution, defense counsel states that the issue of release was not resolved and that a hearing is requested. The government has filed a brief in opposition to the defendant's motion (Doc. 24), and the defendant has filed a reply brief. (Doc. 25). The motion is ripe for a decision.

## I.    *Statement of Facts*

Andrewsh has been charged by criminal complaint with possession with intent to distribute more than 50 grams of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. § 841. If convicted, he faces a maximum term of imprisonment of greater than 10

years. At the detention hearings held on December 18, 2019, and March

5, 2020, the parties agreed that the presumption under 18 U.S.C. §

3142(e)(3) applied.[1] The government proffered that, on December 11,

2019, DEA agents used a confidential informant to conduct a controlled

purchase of crystal methamphetamine from Andrewsh and another

individual present at Andrewsh's Scranton residence. On December 17,

2019, the DEA executed a federal search warrant at Andrewsh's

residence, recovering several hundred grams of suspected crystal

methamphetamine, two loaded handguns, drug packaging materials and

paraphernalia, and a few thousand dollars. Nearly all the suspected

narcotics and cash, and both firearms, were recovered from Andrewsh's

bedroom. Neither handgun was registered to Andrewsh. At the time,

Andrewsh was on pretrial release for state drug trafficking charges, also

involving crystal methamphetamine. Andrewsh is allegedly part of a

conspiracy that imported substantial quantities of methamphetamine

into the Middle District for distribution. We found that the defendant did

not introduce sufficient evidence to rebut the presumption and no

---

[1] The rebuttable presumption in 18 U.S.C. § 3142(e)(3) reflects a Congressional finding that drug trafficking is a danger to the community and drug traffickers pose special flight risks.

combination of conditions would ensure Andrewsh's appearance at trial and the safety of the community. Therefore, his detention was ordered.

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, we concluded that Andrewsh be detained pending trial because the government proved by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person in the community. We further found that the government proved by a preponderance of evidence that no condition or combination of conditions of release will reasonably assure Andrewsh's appearance as required. We also found that Andrewsh did not produce that quantum of evidence necessary to overcome the presumption. In addition to the findings made on the record at the hearing, the reasons for detention included the following: the weight of evidence against the defendant is strong; he is subject to a lengthy period of incarceration if convicted; his prior criminal history; and his participation in criminal activity while on probation, parole, or supervision.

In his motion for review of detention order, Andrewsh contends that we concluded that our decision was based in part on the unsuitability of

the proposed release plan at the time, under which Andrewsh would have resided with a friend with a substance abuse history. (Doc. 19 ¶4). While it is true that we were not inclined to release Andrewsh to the custody of a friend with a history of substance abuse—a plan the defendant acknowledges was inadequate (*Id*. ¶9)—other considerations aided in our decision that led to his detention. For example, Andrewsh's involvement in similar criminal activity that resulted in his arrest on October 11, 2019, in the Court of Common Pleas of Lackawanna County for delivery and possession with intent to deliver a controlled substance; his engaging in criminal conduct while under supervision; the recommendation of detention by the United States Probation Office; that drug trafficking is inherently a danger to the community; that drug traffickers inherently pose special flight risks; and that the rebuttable presumption applied to this case and that Andrewsh had not rebutted the presumption that detention was necessary to assure his appearance and to protect the community. Further, Andrewsh seeks reconsideration of our order of detention, if only temporarily, due to the risks associated with being confined in a large group during the COVID-19 global pandemic because of his history of asthma and mental health problems. (*Id*. ¶¶5-7).

We granted Andrewsh's request for a hearing on the motion which we conducted telephonically on April 16, 2020. At the hearing, the defendant's mother, Denise DeMorrow, and his father, Robert Andrewsh, Sr., testified that they are willing to be designated as third-party custodians despite their divorce and separate living arrangements. For the reasons discussed herein, we will deny Andrewsh's motion.

## II. *Discussion*

### a. *COVID-19 Global Pandemic*

We are mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.[2] "COVID-19 is the infectious disease caused by the novel coronavirus." *United States v. Roeder*, ___ Fed. App'x ___, 2020 WL 1545872, at *1 (3d. Cir. Apr. 1, 2020) (per curiam). We are also cognizant that the President of the United States has declared a national emergency and the Governor of Pennsylvania has declared a state of emergency and issued a stay-at-home order through April 30, 2020. Further, the Governor has ordered all schools to remain closed for the remainder of the 2019-2020 academic

---

[2] World Health Org., *WHO Characterizes COVID-19 as a Pandemic* (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen.

school year. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash and/or sanitize frequently, and to avoid close contact with others—all of which presents challenges in detention facilities. *See Roeder*, 2020 WL 1545872, at \*2; *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at \*2 (D. Md. Mar. 17, 2020).

### b. Conditions of LCP

Andrewsh alleges that LCP inmates report a scarcity of soap and cleaning supplies, and that hand sanitizer is unavailable. He also alleges that the medical services at LCP are inadequate given that Andrewsh is an asthmatic. Further, he asserts that LCP lacks the resources necessary to engage in screening and testing of inmates, correctional staff, law enforcement officers, and other care and service providers who enter the facility. He also maintains that, as additional people are arrested who have been out in the community as the coronavirus spreads and are brought to the LCP, they will be held with the existing population unless they are found to be symptomatic. As a consequence, Andrewsh contends that it is difficult or impossible for those inmates most at risk to engage in social distancing and self-quarantine precautions as recommended by

the Centers for Disease Control and Prevention. Lawyer visits have been limited to meetings through glass making the preparation of a defense difficult, and potentially impossible. (Doc. 19 ¶¶ 7-8; Doc. 20, at 6).

In its brief in opposition, the government concedes a recent disclosure that a guard at LCP recently tested positive for the COVID-19 virus, which resulted in inmates being placed in lockdown, permitted only to leave their cells for showers, phone calls, attorney visits (through glass windows), and video teleconferencing for court proceedings. (Doc. 24, at 9). The government proffers in its brief that LCP has reported no other staff member or inmate has reported flu-like symptoms. (*Id*.). At the April 16, 2020, hearing, the government proffered that as of that date, no other inmate or corrections officer at LCP have tested positive for the coronavirus. We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison. *See Shakur v. Costello*, 230 Fed. App'x 199, 201 (3d Cir. 2007) (per curiam) (taking judicial notice of county prison procedures). Under these new policies and procedures, LCP has suspended contact visits, regular visitation, and visitation from volunteers, including religious leaders. It has implemented aggressive

sanitation programs and suspended all programs that utilize "outside" employees. It has prohibited individuals other than prison and medical staff to proceed any further than the reception area. It has limited attorney visits with inmates to meetings through a glass partition in a lawyer visitation room unless written permission is granted by the warden or the deputy warden. It has cancelled all conferences and out-of-county training. It has provided for weekly contact with officials from the state department of corrections. It has posted educational flyers in the blocks and in the reception area. It has also implemented body temperature screening checks for all employees and lawyers as they enter the facility. *United States v. Mendoza*, No. 5:20-mj-00011, 2020 WL 1663361, at *3 & n.4 (M.D. Pa. Apr. 3, 2020).

### c. *18 U.S.C. § 3142(i)—Temporary Release*

In his brief, Andrewsh seeks relief under 18 U.S.C. § 3142(i) which allows a judicial officer, by subsequent order, to permit the temporary release of a person to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or another compelling reason. He cites the same reasons above in support of his

position that the global pandemic and his heightened health risks constitute "another compelling reason" to justify his release.

Section 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply the proper legal standards that govern an individual's particular request for relief. *Roeder*, 2020 WL 1545872, at *3.

Until recent events spawned by the COVID-19 global pandemic, defendants seeking release under § 3142(i) generally did so because it was necessary to prepare the person's defense. Those courts finding "another compelling reason," however, typically granted release "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Lee*, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020)

(quoting *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS, which could no longer be managed by correctional authorities); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshals Service refused to take custody of him until his wounds closed).

A defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan., Mar. 25, 2020). We must make an individualized determination as to whether COVID-19 concerns are compelling in a particular case to justify temporary release under § 3142(i). *Id*. A decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both

individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*Clark*, 2020 WL 1446895, at *3.

The original grounds for Andrewsh's detention included his involvement in similar criminal activity that resulted in his arrest on October 11, 2019, in the Court of Common Pleas of Lackawanna County for delivery and possession with intent to deliver a controlled substance; his engaging in criminal conduct while under supervision; we were not inclined to release Andrewsh to the custody of a friend with a history of substance abuse; the United States Probation Office's recommendation of detention; that drug trafficking is a danger to the community; that drug traffickers pose special flight risks; and that the rebuttable

12

presumption applied to this case and that Andrewsh had not rebutted the presumption that detention was necessary to assure his appearance and to protect the community.

Andrewsh states that his history of asthma and mental health problems should justify his release considering the coronavirus pandemic. In support of these reasons, he attached two pages documenting his list of immunizations, his list of medical problems, and his list of medications. (Doc. 20-1). That submission documents his diagnosis of bipolar disorder (not otherwise specified) and asthma (unspecified). It also documents medication for asthma and mental health disorders. These records represent his medical status as of June 23, 2011. He does not contend that these medications are not being administered to him as prescribed. Rather, as Andrewsh acknowledges, we have previously recognized that, despite Andrewsh's mental health history and substance abuse problems, he was receiving appropriate treatment. (Doc. 20, at 11).

His release plan, which includes his father and his mother acting as third-party custodians, does not appear to mitigate or exacerbate other COVID-19 risks to Andrewsh or to others. The father testified that he is

a truck driver for a local company. His workday begins at 5:00 a.m. and concludes at approximately 5:00 p.m. He lives in Old Forge, Pennsylvania, with his girlfriend, Michelle Reviello, and her 17-year-old daughter. He and Ms. Reviello lease their home which has two bedrooms. Although Ms. Reviello did not testify, the father testified that he and she are the lessees of the property and Ms. Reviello consents to the defendant residing with them. Further, the father stated that they are willing to make bedroom adjustments by allowing the defendant to sleep in one of the bedrooms and Ms. Reviello and her daughter sleeping in the other bedroom; the father is willing to sleep elsewhere in the house because he does not sleep well and starts his day very early. We are uncomfortable, however, with allowing the defendant to reside in the same household with an unrelated minor. The defendant's mother testified that, despite her disability, she is willing to serve as a third-party custodian during the hours that the father is out working. The court finds the testimony of both the father and mother to be credible, forthright, and reflective of their good intentions for the benefit of their son. Nevertheless, despite their good faith efforts, we are not satisfied that this proposed living arrangement is in their best interest or the best interests of Ms. Reviello

and her minor daughter. Nor are we persuaded that the defendant's proposed release would not increase COVID-19 risks to others—both to the several members of the two households into which it is proposed the defendant be released, and to the surrounding community.

While the court remains sympathetic to Andrewsh's concerns regarding the possibility of health complications caused by the COVID-19 virus, "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-51, 2020 WL 1501859, at *3 (W.D. Pa. Mar. 30, 2020); *see also United States v. Pritchett*, CR 19-280, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (despite being sympathetic to defendant's medical conditions, including a diagnosis of asthma, speculation concerning possible future conditions in jail does not constitute a "compelling reason" for temporary release.); *United States v. Jones*, 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that, while the defendant suffered from hypertension, sleep apnea, and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions were not sufficient to establish a compelling reason for release in light of the danger to the community posed by his release and

the efforts undertaken at the jail to combat the spread of the virus) (citing *United States v. Davis,* 2020 U.S. App. LEXIS 9987 (3d Cir. Mar. 20, 2020)). Ms. DeMorrow testified that she had difficulty recalling the last time the defendant was required to visit an emergency room for his asthma issues and speculated that it could have been approximately five to seven years ago. The state of the record reflects that the defendant's asthma related issues seem to be under control.

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Williams*, No. PWG-19-8, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying defendant's motion even where at least five inmates had tested positive for COVID-19 and defendant suffered from allergies and asthma); *United States v. Bilbrough*, TDC-20-0033, 2020 WL 1694362 (D. Md. Apr. 7, 2020) (affirming magistrate judge's denial of motion by defendant who suffered from diabetes); *United States v. Julius Williams*, PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020) (denying a 67-year-old defendant's motion); *United States v. Penaloza*, TDC 19-238, 2020 WL 1555064 (D. Md. Apr. 1, 2020) (denying motion of defendant who suffered from a heart murmur); *United States v. Jefferson*,

CCB-19-487, 2020 WL 1332011 (D. Md. Mar. 23, 2020) (denying motion of asthmatic defendant). Thus, we are left to speculate whether Andrewsh's continued incarceration would likely increase his risk of harm. However, mindful of the rapidly evolving conditions in prisons throughout the nation as well as the COVID-19 pandemic, we will entertain a renewed request for release if at some point in the future it becomes clear that there are compelling reasons to justify the defendant's release. *United States v. Sanchez*, 1:19-cr-00152, 2020 WL 1814159 *7 (M.D. Pa. Apr. 9, 2020) (citing *United States v. Lee*, No 19-CR-298 (KBJ), 2020 1541049, at *7 (D.D.C. Mar. 30, 2020).

### III.   Conclusion

For all of reasons set forth above, Andrewsh has failed to demonstrate a compelling reason under 18 U.S.C. § 3142(i) for reconsideration of the Court's prior order of detention. Therefore, his motion is denied.

An appropriate order follows.

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated:  April 17, 2020